## PLANTERS' BANK OF THE STATE OF GEORGIA vs. GRIFFIN L. LAMKIN, AND OTHERS.

A Bank was incorporated, with the power to appoint necessary officers, to take bonds from them, and to make all necessary by-laws, rules and regulations. By one of the by-laws of such corporation it was provided, that it should be the duty of every other officer of the Bank, to perform such services as might be required of them, by the President and Cashier. In an action against principal and sureties, on a bond given by a bookkeeper of said Bank, conditioned for the faithful performance of the duties of his office, *and all other duties required of him in said Bank, &c.*, held, that the bond was taken in conformity to, and authorized by the charter.

And where such bookkeeper, whilst in the discharge of " other duties in said Bank," fraudulently took large sums of money therefrom ; *held*, that the securities on his official bond, were liable to the amount of their bond.

The failure of obligee to notify to the securities of the obligor, the delinquency of their principal as soon as discovered, will not relieve them from their obligation.

### By BERRIEN, Judge.

THE facts of this case appear from the following *verdict.*

" We find that by acts of the Legislature, certain persons were incorporated as a Body Politic, under the name and style of the Planters' Bank of the State of Georgia ; that by the said acts of incorporation " the Directors for the time being shall have power to appoint such officers and clerks under them, as shall be necessary for conducting the business of the said corporation, and to allow them such compensation for their services as shall be reasonable." Also, that the said Planters' Bank of the State of Georgia, may " ordain, establish and put in execution such by-laws, rules and regulations as shall seem necessary and convenient for the government of the said corporation. Also, that the Cashier or Treasurer of the Bank for the time being, and all other officers appointed by the Directors (except the President,) before he or they enter upon the duties of his or their office, shall give bond with two or more securities to the satisfaction of the Directors in sum or sums as shall be required by the said Directors, with con-

dition for his or their good behaviour and a faithful discharge of duty." That by the thirty-fourth clause of the "rules and regulations of the Planters' Bank of the State of Georgia," It is ordered, that it shall be the duty of every other officer, clerk or servant of the Bank, to do and perform such duties and services as may be required of them respectively from time to time by the President or Cashier; that before the election of officers for the said Bank, it was resolved by the said Planters' Bank of the State of Georgia, " that the bookkeeper give two securities, to be bound jointly and severally in the sum of five thousand dollars to be approved of;" that the defendant, Griffin L. Lamkin, was duly appointed bookkeeper to the said Bank, and gave bond with the other defendants, as securities, in the said sum of five thousand dollars, and which bond is now the subject of this suit, and contains the following condition, to wit: " that if the said Griffin L. Lamkin, shall well and truly execute, and faithfully discharge the duties of the said office, and all other duties required of him in the said Bank, and in all things relating to the same, shall well and faithfully behave, then the obligation to be void." We do further find that the said Griffin L. Lamkin, entered on the duties of bookkeeper on the seventeenth day of January, in the year of our Lord one thousand eight hundred and twelve, that from time to time orders are given by the Cashier or President, for officers of the said Bank to perform the duties of other officers of the Bank when either of them is sick or absent, pursuant to the aforesaid thirty-fourth rule and regulation of the Planters' Bank of the State of Georgia, that in conformity with the said rule and regulation, the said Griffin L. Lamkin, did occasionally act for and in behalf of the Teller of the said Planters' Bank of the State of Georgia, when such Teller was absent or sick. We further find that certain sums of money were at various times taken by the said Griffin L. Lamkin, from the said Bank and of the moneys of the said Planters' Bank of the State of Georgia, amounting in the whole, to the sum of thirty thousand, three hundred and seventy

[Planters' Bank vs. Lamkin, et. al.]

dollars, whilst he was acting as bookkeeper, as aforesaid, and also as Teller, in the absence or sickness of the actual Teller: that whenever the Teller was about to be absent, he named the officer who would officiate for him in his absence, and that the said Teller having great confidence in the said Griffin L. Lamkin, he generally named and called on him to discharge the duties of Teller in his absence, the Cashier or President consenting to such nomination : that in one instance in which a deficiency arose from an error committed by the said Griffin L. Lamkin, when acting for the Teller, amounting to about one hundred dollars, that deficiency was made up by the Cashier. We further find that by the twenty-ninth rule of the Planters' Bank, it is provided that the books of the Bank shall be regularly balanced and the statement of the affairs of the corporation shall be laid before the Directors on the first Monday in June, and the first Monday in December in every year, and examined by a committee of the whole Board : that in the first half yearly settlement after the commencement of said embezzlement, there appeared to be more due to individuals on the private ledgers than the general statement of the Cashier called for. We further find that each sum taken from the funds of the Planters' Bank of the State of Georgia, by Griffin L. Lamkin, whilst bookkeeper, as aforesaid, was entered in his check book in the names of persons who had before drawn such checks, but which checks had been paid, so as to enable the defendant, Griffin L. Lamkin, as bookkeeper, as aforesaid, to balance the amount so taken, but such pretended checks were not posted in the ledger kept by the said Griffin L. Lamkin, as other checks fairly drawn were, at the debit of the individuals drawing such checks. We further find that the duties of the Teller's office, consists in receiving and paying money, that at the close of each day, he settles the cash account for the day, that this settlement is made by charging himself with the amount on hand or received from the Cashier at the commencement of the day, and the amount of all moneys received in the course of

the day, and crediting himself with the amount of checks paid, entered and reported to him by the bookkeeper; and the balance of money and bank notes on hand, and if there be any deficiency after crediting the amount of checks entered and reported by the bookkeeper, the Teller is accountable. That the sums so taken from the money of the Planters' Bank of the State of Georgia, by the said Griffin L. Lamkin, were taken from the ninth day of May, in the year of our Lord, one thousand eight hundred and twelve, to the twenty seventh day of October, in the year of our Lord, one thousand eight hundred and fourteen, inclusive : that the taking of the several sums of money, as aforesaid, by the said Griffin L. Lamkin, was first discovered by officers of the said Bank in the beginning of the month of November, in the year last mentioned, and that notice thereof was given to the defendants as soon as the same was fully ascertained, to wit, on the eighth day of December following. That a suit was instituted by the said Planters' Bank of the State of Georgia, *against the said Griffin L. Lamkin* for part of said sums, to wit, for the sums of sixteen thousand, four hundred and twenty dollars. That the suit was brought on the twenty-eighth day of October, in the year of our Lord one thousand eight hundred and fourteen, and the said Griffin L. Lamkin, held to bail for the said amount, upon which sum or verdict was found at the present term against the said Griffin L. Lamkin, for the said sum of sixteen thousand four hundred and twenty dollars, and upon the evidence of facts as stated in this verdict. If therefore, upon this statement the Court is of opinion, that the said bond is forfeited and the defendants liable, we then find for the plaintiffs the sum of five thousand dollars and costs.

If the Court is of opinion that the bond is not forfeited, and the defendants are not liable, then we find for the defendant without costs.

　　　　　　　　　　JOS. BACON, *Foreman.*"

[Planters' Bank vs. Lamkin, et. al.]

THE following questions have been raised upon the special verdict in this case.

Is the bond of the defendants taken in conformity to the act of incorporation? If not so taken, can it be maintained at common law?

If either of these questions be answered affirmatively, have the plaintiffs forfeited their right to recover by their laches in failing at an earlier period to notify to the securities the delinquency of their principal?

It was indeed also further argued, that the facts found by the special verdict did not shew a breach of the condition of the bond, admitting it to have been valid, because the words "other duties" must be limited to extra duties belonging to the particular office of the principal, and not extended to duties attached to other offices in the Bank. But upon this it seems to me sufficient to remark that the words of the condition are too plain to admit of controversy, and expressly negative this idea. The defendants stipulate that their principal shall faithfully discharge *the duties of his said office,* and all *other* duties required of him in said Bank. Now these last mentioned duties, may be duties attached to some other office in the Bank, or general duties not specially assigned to any particular office, if there be any such unappropriated duties. But most clearly they cannot be said to be duties belonging to the defendants particular office, for these are expressly excluded by the term "other duties," which means duties in addition to and exclusive of the duties of his office. I return, therefore, to the questions proposed—and of these I shall consider only the first and third, because, if the view which I have taken of this subject be correct, they embrace the whole merits of the present controversy.

I am of opinion that the bond of the defendants is taken in conformity to the act of incorporation. I extract from the special verdict the following propositions:

PART I.—E.

The Bank had power by charter to appoint the necessary offi-
cers, and were authorized to take bonds from all other officers,
except the President.

They were empowered to ordain, establish, and put in execu-
tion such by-laws, rules and regulations, as should seem neces-
sary for the government of the corporation.

One of their by-laws expressly provides, that it shall be the
duty of every other officer of the Bank, to perform such services
as may be required of them, respectively, from time to time, by
the President or Cashier.

The services contemplated by this by-law are obviously in
addition to those which result from the duties specifically appro-
priated to each particular office, those "*other duties*" of which
we have before spoken. The effect of the regulation is to pro-
duce, under the direction of the President and Cashier, an inter-
change of office, a substitution of one officer for another, as the
necessity of the corporation should require. The provisions of
this by-law are clearly co-extensive with the conditions of the
bond, and there is no pretence to say that the limits of the char-
ter are transcended by these provisions. If the discretion given
to the Directors were invested in this Court, I should unhesita-
tingly affirm that the regulation in question universally prevalent
in similar institutions, is necessary and convenient for the govern-
ment of the corporation. The conclusion is unavoidable. The
condition of the bond is pursuant to the regulation before referred
to. The by-law which prescribes that regulation is authorized
by the charter—and thus the condition of the bond is conforma-
ble to the charter. I am equally clear, that the plaintiffs' right
of action has not been forfeited by their failure at an earlier period
to notify to the securities the delinquency of their principal.
The case cited from East, establishes the principle, that laches in
not properly examining the accounts of the obligor for eight or
nine years, and in not calling upon him as soon as might have

[Planters' Bank vs. Lamkin, et. al.]

been done for the sum unaccounted for, is no estoppel at law in an action against the securities. But apart from the doctrines of this case, it may be safely denied that there has been any laches on the part of the plaintiffs in the case at bar. The delinquency of the principal defendant was first discovered in the beginning of November, 1814, and the Jury have found that notice was given to his securities as soon as the sum was fully ascertained, to wit, on the eighth day of December following. In this particular, then the finding of the Jury expressly negatives the imputation of laches. And at what earlier period could notice have been given? The existence of an error in the monied operations of the institution was indeed ascertained in 1812—but the cause to which it was to be ascribed, remained enveloped in mystery. The error in question did not necessarily involve the idea of an actual deficit. If it had done so, the Bank were still without evidence as to the particular delinquent. To impose upon them the obligation to give notice under such circumstances, would be to require that such notice should have been general to the securities of all the officers of the Bank ; the effect of which would have been to excite an unwarrantable suspicion against persons innocent of the fraud, and to render its detection more difficult by putting its perpetrator upon his guard.

As little aid can be derived to the defendants from the time occupied by the plaintiffs in tracing the fraud to its source. Want of diligence is not to be presumed in a case where vigilance is enforced by every motive of feeling and of interest. The arrangement of the principal defendant was ingenious, and would probably much longer have escaped the most vigilant scrutiny if he had remained at his post, personally performing the duties of his own particular office. It suffices that notice was given, as soon as the delinquent was in fact discovered ; any requisition beyond this, would operate as a premium to fraud, graduated by the successful ingenuity of its perpetration. Let the *postea* be delivered to the plaintiffs.